# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| CRYPTOMETRICS, INC., | § | |
| | § | |
| Debtor. | § | CASE NO. 10-53622 |

## DEBTOR'S CHAPTER 11 PLAN

OKIN ADAMS & KILMER LLP
Christopher Adams
M. Renee Moxley
1113 Vine Street, Suite 201
Houston, Texas  77002
(713) 228-4100 Telephone
(888) 865-2118 Facsimile


Attorneys for CryptoMetrics, Inc.


Dated:  September 17, 2010

## INTRODUCTION

CryptoMetrics, Inc. (the "Debtor"), proposes the following Chapter 11 plan (the "Plan") for the resolution of the outstanding claims against and equity interests in the Debtor. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129. Reference is made to the Debtor's disclosure statement, distributed contemporaneously with the Plan (the "Disclosure Statement"), for a discussion of the Debtor's history, business, results of operations, risk factors and for a summary and analysis of the Plan. There may be other agreements and documents, which will be filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement that will be available for review.

## ARTICLE 1.
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A. **Scope of Definitions**

Unless otherwise stated, all terms not defined herein shall have the meaning set forth in the Bankruptcy Code and the Bankruptcy Rules. Where there is a conflict between the defined terms herein and any terms in the Bankruptcy Code or the Bankruptcy Rules, the definitions herein shall control. The following terms when used in the Plan shall have the meanings set forth in this Article.

### B. Definitions

**1.1** **"Administrative Expense Claim"** shall mean a Claim for costs and expenses of administration allowed under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under §§ 328(a), 330(a) or 331 of the Bankruptcy Code, including Fee Claims; (c) Claims for reclamation allowed in accordance with § 546(c) of the Bankruptcy Code; and (d) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; but excluding any Administrative Expense Claim.

**1.2** **"Allowed Claim"** shall mean:

(a) A Claim that (i) has been listed in the Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim;

(b) A Claim (i) for which a Proof of Claim or request for payment of Administrative Expense Claim has been filed by the applicable Bar Date or otherwise been deemed timely filed under applicable law; and (ii) that is not otherwise a Disputed Claim; or

(c) A Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Plan Agent and the Claimant on or after the Effective Date; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to

the Effective Date, approved by the Bankruptcy Court; (iii) pursuant to a Final Order; or (iv) pursuant to the terms of the Plan.

**1.3** **"Auction"** is as defined in the Sale Order.

**1.4** **"Avoidance Action"** shall mean any right, claim and/or cause of action arising under any provision of Chapter 5 of the Bankruptcy Code.

**1.5** **"Ballot"** shall mean the form or forms distributed to each holder of an Impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.6** **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect at the relevant time.

**1.7** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court, Western District of Texas, San Antonio Division or any such Court having jurisdiction over the Case.

**1.8** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as may be amended and as supplemented by any local bankruptcy rules adopted by the Bankruptcy Court.

**1.9** **"Bar Date"** shall mean _____, the last day on which to timely-submit a proof of claim in the Chapter 11 case.

**1.10** **"Bar Date Order"** shall mean an order of the Bankruptcy Court establishing Bar Dates for filing Proofs of Claim in the Case, as the same may be amended, modified or supplemented.

**1.11** **"Business Day"** shall mean any day on which national banks are open to carry on their ordinary commercial banking business in the State of Texas.

**1.12** **"Case"** shall mean the Chapter 11 case of the Debtor, in the Bankruptcy Court under Case No. 10-53622.

**1.13** **"Cash"** shall mean legal tender of the United States.

**1.14** **"Cause of Action"** shall mean any claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, whether arising under any contract or federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

**1.15** **"Claim"** shall mean a "claim," as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

**1.16** **"Claimant"** shall mean the holder of a Claim.

**1.17** **"Class"** shall mean a class of Claims or Equity Interests as that term is used in the § 1122 of the Bankruptcy Code.

**1.18** **"Collateral"** shall mean any property or interest in property of the Estate of the Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, change, encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.19** **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.20** **"Confirmation Hearing"** shall mean the hearing to consider confirmation of this Plan.

**1.21** **"Confirmation Order"** shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**1.22** **"Court Order"** shall mean an order issued by the Bankruptcy Court and entered in the Court's record.

**1.23** **"Cure Claim"** shall mean any claim arising under § 365(b)(1) of the Bankruptcy Code.

**1.24** **"Debtor"** shall mean CryptoMetrics, Inc.

**1.25** **"Deficiency Claim"** shall mean the unsecured portion of a Secured Claim as determined by § 506(a) of the Bankruptcy Code.

**1.26** **"DIP Loan Documents"** is as defined in the Financing Order.

**1.27** **"DIP Lender(s)"** shall mean the "Lender(s)" under the Financing Order.

**1.28** **"DIP Obligations"** is as defined in the Financing Order and the DIP Loan Documents.

**1.29** **"DIP Lender Claim"** shall mean the Secured Claim of the DIP Lender arising under the DIP Loan Documents.

**1.30** **"Disallowed Claim"** shall mean a Claim or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or (c) is not Scheduled and as to which a Bar Date has been set but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

**1.31** **"Disclosure Statement"** shall mean the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan and has been

prepared and distributed by the Debtor, as plan proponent, as the same may be amended, modified or supplemented.

**1.32** **"Disputed Claim"** shall mean a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim and includes, without limitation, Claims that (a) (i) has not been Scheduled by the Debtor or has been Scheduled at zero or as unknown, contingent, unliquidated or disputed, and (ii) are not the subject of an objection filed in the Bankruptcy Court or as to which the time for filing an objection has not yet expired, (b) that are the subject of a Proof of Claim that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the Bankruptcy Court, which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**1.33** **"Disputed Claims Reserve"** shall have the meaning ascribed thereto in Section 8.3 of the Plan.

**1.34** **"Distribution"** shall mean, as the context requires: (a) the Cash or other property or consideration to be provided under this Plan to the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer or delivery of Cash or other property to Claimants and holders of Equity Interests pursuant to this Plan.

**1.35** **"Effective Date"** shall mean the date that is fifteen (15) days after the date of the entry of the Confirmation Order by the Bankruptcy Court; provided, however, that (a) if the fifteen (15) day following the Confirmation Date falls on a day that is not a Business Day or a Saturday or Sunday, then the Effective Date shall be the first Business Day thereafter, and (b) if any act required to be performed on the Effective Date, or any condition required to exist on the Effective Date, cannot be performed or made to exist on the fifteen (15) day after the Confirmation Date due to the existence of a Court Order staying or otherwise precluding execution of the Plan or any part thereof, then the Effective Date shall be the fifteen (15) day after the later of the date on which the order staying or otherwise precluding execution of the Plan or any part thereof has been nullified, vacated or otherwise modified.

**1.36** **"Entity"** shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

**1.37** **"Equity Interest"** shall mean (a) any share of common or preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest, and (b) any Claim that is recharacterized as an Equity Interest by a Final Order of the Bankruptcy Court.

**1.38** **"Estate"** shall mean the estate created for the Debtor in the Case pursuant to § 541 of the Bankruptcy Code.

**1.39** **"Executory Contract"** or "Unexpired Lease" shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.40** **"Fee Claim"** shall mean a Claim under §§ 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Cases from the Petition Date through the Effective Date.

**1.41** **"Final Distribution Date"** shall have the meaning ascribed thereto in Section 7.4 of the Plan.

**1.42** **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely filed, or as to which any appeal that has been filed or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; provided however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.43** **"Financing Order"** shall mean the Final Order under 11 U.S.C. §§105, 361, 363 and 364 and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtor to In Post-Petition Indebtedness and (II) Approving Use of Cash Collateral, Docket Entry No.___.

**1.44** **"General Unsecured Claim"** shall mean any Unsecured Claim.

**1.45** **"Impaired"** shall mean when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is "impaired" within the meaning of § 1124 of the Bankruptcy Code.

**1.46** **"Initial Distribution Date"** shall mean the date on which the Plan Agent makes the first Distribution to General Unsecured Creditors under Article 7 of the Plan.

**1.47** **"Lien"** shall mean a lien, security interest or charge against or interest in property of the Debtor to secure payment of a debt or performance of an obligation owed by the Debtor.

**1.48** **"Liquidating Debtor"** shall mean CryptoMetrics, Inc. from and after the Effective Date of the Plan.

**1.49** **"Liquidating Debtor Assets"** shall mean each and every asset of the Debtor's Estate at the Effective Date, and proceeds thereof, and at any time thereafter any asset that has not previously been distributed, abandoned or otherwise paid out in accordance with this Plan.

**1.50** **"Other Secured Claim"** shall mean any Secured Claim other than a DIP Lender Claim or an SCG Secured Claim.

**1.51** **"Person"** shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code), or other entity.

**1.52** **"Petition"** shall mean the voluntary petition for the Debtor filed in the Bankruptcy Court on September 17, 2010 under chapter 11 of the Bankruptcy Code, and any amendments or modifications thereto.

**1.53** **"Petition Date"** shall mean the date and time of the filing of the Petition, initiating the Case, on September 17, 2010.

**1.54** **"Plan"** shall mean this Chapter 11 plan for the Debtor, filed by the Debtor, either in its present form or as it may be altered, amended, or modified, including all Exhibits thereto.

**1.55** **"Plan Agent"** shall mean the Person appointed and duly serving in accordance with Section 6.5.2 of this Plan.

**1.56** **"Post-Confirmation"** shall mean an act or event that occurs, will occur, or occurred on or after the Confirmation Date.

**1.57** **"Pre-Petition"** shall mean an act or event that occurred before the Petition Date.

**1.58** **"Priority Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

**1.59** **"Priority Tax Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**1.60** **"Professional"** shall mean any professional employed in the Case pursuant to §§ 327, 328 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to § 503(b)(4) of the Bankruptcy Code.

**1.61** **"Proof of Claim"** shall mean Official Form 10 as is used in the Bankruptcy Court as evidence of a Claim, properly filled-out, executed with supporting documentation, and filed with the Bankruptcy Court before any applicable Bar Date.

**1.62** **"Pro Rata"** shall mean when used with reference to a distribution to holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article 5 of this Plan, proportionately so that with respect to a particular Allowed Claim in such Class, the ratio of (a)(i) the amount distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

**1.63** **"Protected Person"** shall have the meaning set forth in Section 11.7 of the Plan.

**1.64** **"Rejection Claim"** shall have the meaning ascribed thereto in Section 9.1 of the Plan.

**1.65    "Rights of Action"** shall mean (a) any avoidance, recovery, subordination or other action of the Debtor, the Estate or the Liquidating Debtor, (b) any Cause of Action of the Debtor, the Estate or the Liquidating Debtor, (c) any objection or other challenge to a Claim and (d) any objection or other challenge to an Interest.

**1.66    "Sale Order"** shall mean the Order (A) Authorizing the Sale of Substantially All of Certain Debtor's Assets and (B) Approving the Asset Purchase Agreement, Docket Entry No. ___.

**1.67    "Sale Proceeds"** shall mean all net proceeds received by the Debtor in connection with the sale of substantially all of the assets of the Debtor occurring subsequent to the Petition Date.

**1.68    "SCG Collateral"** shall mean the collateral pledged to Security Concepts Group, LLC pursuant to the SCG Loan Documents.

**1.69    "SCG Credit Bid"** shall mean SCG's right to credit bid the aggregate value of its SCG Secured Claim and DIP Lender Claim at the Auction.

**1.70    "SCG Loan Documents"** shall have the same meaning ascribed to such term in the Financing Order.

**1.71    "SCG Secured Claims"** shall mean any Claims of Security Concepts Group, LLC arising under the SCG Loan Documents and the Financing Order to the extent such constitute a Secured Claim.

**1.72    "Scheduled"** shall mean, with respect to any Claim or Equity Interest, the status, priority and amount, if any, of such Claim or Equity Interest as set forth in the Schedules.

**1.73    "Schedules"** shall mean the schedules of the Debtor's assets and liabilities and the statements of financial affairs filed by the Debtor, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**1.74    "Secured Claim"** shall mean a Claim that is secured by a Lien on an asset to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) and, if applicable, § 1129(b) of the Bankruptcy Code.

**1.75    "Stipulation of Amount and Nature of Claim"** shall mean a stipulation or other agreement between the Debtor, the Liquidating Debtor or the Plan Agent and a Claimant, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

**1.76    "Subordinated Claims"** means any Claim which (i) is subordinated pursuant to § 510(c) of the Bankruptcy Code, (ii) arising from rescission of a purchase or sale of a debt security of the Debtor, for damages arising from the purchase or sale of such debt security, or any Claim for reimbursement, contribution, or indemnification arising from or relating to any such Claims, or (iii) is a Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive

damages, or otherwise not predicated upon compensatory damages, and that would be subordinated in a Chapter 7 case pursuant to § 726(a)(4) of the Bankruptcy Code or otherwise.

**1.77** **"Subsequent Distribution Date"** shall mean each date, as chosen by the Plan Agent in its discretion, upon which subsequent Distributions are made to Claimants following the Initial Distribution Date.

**1.78** **"Successful Bidder"** is as defined in the Bidding Procedures, Exhibit B to the Order (I) Approving the Form of Stalking Horse APA, (II) Approving Bidding Procedures for an Auction of Debtor's Assets, (III) Scheduling a Date for the Auction, (IV) Approving the Form of Proposed Notice of Auction and Sale Hearing, and (V) Setting Certain Dates Related to the Sale of the Debtor's Assets, Docket No. __.

**1.79** **"Unclassified Claims"** shall mean those Claims described in Article 2 of this Plan.

**1.80** **"Undisputed Balance"** shall have the meaning ascribed thereto in Section 8.2 of the Plan.

**1.81** **"Unimpaired Class"** shall mean, when used with reference to a Claim, a Claim that is not Impaired.

**1.82** **"Unsecured Claim"** shall mean any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim or Subordinated Claim.

C.     Rules of Interpretation

For purposes of this Plan (a) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be in such form or on such terms and conditions, (b) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, (f) the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, (g) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control, and (h) to the extent this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control.

D.     Computation of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE 2.
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1** **Allowed Administrative Expense Claims**.  Subject to the provisions contained in Section 2.2 of this Plan, unless otherwise agreed in writing by the Plan Agent and the holder of an Allowed Administrative Expense Claim, the Plan Agent shall pay to each holder of an Allowed Administrative Expense Claim an amount equal to its Allowed Administrative Expense Claim on the latest of (a) the Effective Date or as soon thereafter as is practicable, (b) 30 days after the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim by the entry of a Final Order, and (c) the date the Plan Agent is otherwise obligated to pay such Administrative Expense Claim in accordance with the terms and provisions of the particular transactions giving rise to such Claim, the terms and provisions of this Plan and any orders of the Bankruptcy Court relating thereto.

**2.2** **Requests for Allowance of Administrative Expense Claims.**  Except as expressly set forth to the contrary in this Plan, each Person, including each Professional, shall file an application for an allowance of an Administrative Expense Claim in conformity with the following:

(a) **Professionals.**  All Professionals shall file a final application for the allowance of a Fee Claim on or before forty-five (45) days following the Effective Date. Objections to any Fee Claim must be filed and served on the Plan Agent and the requesting Professional no later than twenty (20) days after the filing of the applicable request for payment of the Fee Claim.

(b) **Other Administrative Expense Claimants.**  All holders of Administrative Expense Claims other than Professionals and holders of ordinary course trade payable shall file an application for the allowance of an Administrative Expense Claim with the Bankruptcy Court on or before thirty (30) days following the Effective Date.  Holders of Administrative Expense Claims, including such Persons asserting a Claim under § 503(b)(9) of the Bankruptcy Code, who do not file a request by such deadline shall be forever barred from asserting such Claims against the Debtor, the Liquidating Debtor or its property and assets (whether cash or otherwise).

**2.3** **Allowed Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, as soon as practicable following the later of (a) the Effective Date, (b) the date on which such Claim becomes an Allowed Claim, and (c) such other date as agreed by such holder and the Plan Agent.

**2.4** **Other Provisions Concerning Treatment of Priority Tax Claims.** Notwithstanding the provisions of Section 2.3, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except as Allowed under § 507(a)(8)(G) of the Bankruptcy Code.  Other than as Allowed under § 507(a)(8)(G) of the Bankruptcy Code, any such Claim or demand for any such penalty (i) will be subject to treatment in Class 6 pursuant to § 726(a)(4) of the Bankruptcy Code and (ii) the holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Debtor, the Liquidating Debtor or its property.

## ARTICLE 3.
## CLASSES OF CLAIMS AND INTERESTS

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described in Sections 2.1, 2.3 and 2.4, have not been classified and thus are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

3.1    **Class 1 (DIP Lender Claims)** shall consist of any Claims constituting DIP Obligations.

3.2    **Class 2 (SCG Secured Claims)** shall consist of all SCG Secured Claims.

3.3    **Class 3 (Other Secured Claims)** shall consist of all Other Secured Claims.

3.4    **Class 4 (Priority Claims)** shall consist of all Priority Claims.

3.5    **Class 5 (General Unsecured Claims)** shall consist of all General Unsecured Claims.

3.6    **Class 6 (Subordinated Claims)** shall consist of all Subordinated Claims.

3.7    **Class 7 (Equity Interests)** shall consist of all Equity Interests.

## ARTICLE 4.
## IDENTIFICATION OF IMPAIRED CLASSES AND VOTING CLASSES;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES
## OF CLAIMS OR EQUITY INTERESTS

4.1    **Impaired Classes of Claims Entitled to Vote**.  Holders of Claims in each Impaired Class are entitled to vote as a Class to accept or reject this Plan, other than Classes that are deemed to accept this Plan as provided in Section 4.2 herein.  Accordingly, the votes of holders of Claims in Classes 2, 3, 5, 6 and 7 shall be solicited with respect to this Plan.

4.2    **Classes Deemed to Accept the Plan**.  Class 4 Priority Claims are Unimpaired by this Plan.  Under § 1126(f) of the Bankruptcy Code, holders of Class 4 Priority Claims are conclusively deemed to have accepted this Plan, and the votes of such holders will not be solicited.

4.3    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**.  To the extent that any Impaired Class entitled to vote rejects the Plan or is deemed to have rejected the Plan, the Debtor will request confirmation of this Plan, as it may be modified from time to time, under § 1129(b) of the Bankruptcy Code.

**ARTICLE 5.**
**TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

**5.1     Treatment of Class 1 - DIP Lender Claims**.  In full and final satisfaction of the Allowed DIP Lender Claims, the holder of the Allowed DIP Lender Claims shall be treated as follows:  the holder of the Allowed DIP Lender Claims shall be paid in Cash in full by the Plan Agent from the Sale Proceeds on or as soon as practicable following the Effective Date, unless, as explained below, the DIP Lender successfully credit bids at the Auction or unless otherwise agreed by the holder.  The DIP Lender may credit bid its DIP Lender Claims at the Auction.  If the DIP Lender is the Successful Bidder at the Auction, the DIP Lender Claims will be extinguished and credited toward the final purchase price.

**5.2     Treatment of Class 2 – SCG Secured Claims**.  In full and final satisfaction of any Allowed SCG Secured Claims, the holder of Allowed SCG Secured Claims shall receive the following treatment:  on or as soon as practicable following the Effective Date or as provided in the Sale Order, Plan Agent shall pay to the holder of the Allowed SCG Secured Claims the lesser of the following amounts: (a) one hundred percent (100%) of the Sale Proceeds attributable to the SCG Collateral, subject to the rights of any senior Lien holders, or (b) Cash in the full amount of the Allowed SCG Secured Claim.  Any SCG Deficiency Claim shall receive treatment in Class 5 of the Plan.  However, to the extent the holder of the SCG Secured Claims is the Successful Bidder at the Auction, the SCG Secured Claims will be extinguished and credited toward the final purchase price.

**5.3     Treatment of Class 3 -- Other Secured Claims.**  In full and final satisfaction of any Allowed Other Secured Claims, each holder of an Allowed Other Secured Claims shall receive the following treatment, unless otherwise agreed by the holder:  On or as soon as practicable following the later of (i) the Effective Date, and (ii) the date such Claim becomes an Allowed Claim, the Plan Agent shall pay to each holder of an Allowed Other Secured Claim the lesser of the following amounts:  (a) one hundred percent (100%) of the Sale Proceeds attributable to the Collateral securing such Allowed Other Secured Claim, subject to the rights of any senior Lien holders, and (b) Cash in the full amount of such Claim.  Any Deficiency Claims shall receive treatment in Class 5 of the Plan.

**5.4     Treatment of Class 4 -- Priority Claims**.  In full and final satisfaction of any Allowed Priority Claims, each holder of an Allowed Priority Claims shall receive the following treatment, unless otherwise agreed by the holder:  Holders of Allowed Priority Claims shall be paid in Cash in full by the Plan Agent on or as soon as practicable following the later of (a) the Effective Date, and (b) the date on which such Claim becomes an Allowed Claim.

**5.5     Treatment of Class 5 -- General Unsecured Claims**.  In full and final satisfaction of any Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claims shall receive the following treatment, unless otherwise agreed by the holder:  Each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share, up to the Allowed Amount of such Claimant's Allowed Claim, of the Cash proceeds of the Liquidating Debtor Assets remaining following (i) full payment of, or full reservation for, Allowed Administrative Claims, Allowed Priority Claims, Allowed DIP Lender Claims, Allowed SCG Claims, Allowed Other Secured Claims and Allowed Priority Tax Claims, each to the extent

payable from the Estate pursuant to the Plan, and (ii) funding of the Plan Administration Reserve. As soon as practicable following (i) and (ii) above, the Plan Agent shall make an initial Pro Rata Distribution in accordance with this Class 5, in an amount determined in the reasonable discretion of the Plan Agent. The Plan Agent shall make subsequent Pro Rata Distributions in accordance with this Class 5 at such times and in such amounts as determined in the reasonable discretion of the Plan Agent.

    **5.6    Treatment of Class 6 -- Subordinated Claims.** In full and final satisfaction of any Allowed Subordinated Claims, each holder of an Allowed Subordinated Claims shall receive the following treatment, unless otherwise agreed by the holder: Each holder of an Allowed Subordinated Claim shall receive its Pro Rata share, up to the Allowed Amount of such Claimant's Allowed Claim, of Liquidating Debtor Assets remaining following (i) full payment of, or full reservation for, Allowed Administrative Claims, Allowed Priority Claims, Allowed DIP Lender Claims, Allowed SCG Claims, Allowed Other Secured Claims, Allowed Priority Tax Claims and Allowed General Unsecured Claims, each to the extent payable from the Estate pursuant to the Plan, and (ii) funding of the Plan Administration Reserve. As soon as practicable following (i) and (ii) above, the Plan Agent shall make an initial Pro Rata Distribution in accordance with this Class 6, in an amount determined in the reasonable discretion of the Plan Agent. The Plan Agent shall make subsequent Pro Rata Distributions in accordance with this Class 6 at such times and in such amounts as determined in the reasonable discretion of the Plan Agent.

    **5.7    Treatment of Class 7 -- Equity Interests.**

        **5.7.1  Class 7 -- Equity Interests in the Debtor.** All Equity Interests shall be canceled as of the Effective Date. Each holder of an Allowed Equity Interest shall retain a residual interest in the Liquidating Debtor Assets in the event that all Allowed Claims are paid in full pursuant to this Plan. In such event, all remaining Liquidating Debtor Assets shall be delivered, transferred, and/or paid over to the Holders of Allowed Equity Interests on a Pro Rata basis.

    **5.8    Postpetition Interest.** Unless otherwise provided by this Plan or by separate order of the Bankruptcy Court, Unsecured Claims shall not be entitled to recover post-Petition Date interest.

**ARTICLE 6.**
**MEANS FOR EXECUTION OF THE PLAN**

    **6.1    Cancellation of Equity Interests and Re-Issuance of New Common Stock.** On the Effective Date all of the then existing Equity Interests in the Debtor shall be canceled, and the Liquidating Debtor shall authorize and issue 1,000 shares of its common stock, $1.00 par value (the "New Common Stock") to the Plan Agent. The Plan Agent shall be the record owner of the New Common Stock of the Liquidating Debtor, which shall constitute 100% of the issued and outstanding shares of capital stock in the Liquidating Debtor. The Plan Agent shall hold the New Common Stock for the benefit of the holders of Allowed Claims and Allowed Equity Interests against the Debtor. The Plan Agent shall vote such shares at all appropriate times to

elect the Plan Agent as the sole director and officer of the Liquidating Debtor and otherwise to implement the terms and provisions of this Plan.

**6.2    Dissolution of Corporate Entities.**  The Liquidating Debtor shall be dissolved and its corporate existence terminated, without further corporate action, upon the final decree closing this Case become a Final Order, unless the Case is later re-opened or are deemed reinstated for the purpose of effectuating this Plan.  The Confirmation Order shall be deemed the appropriate authorization, to the extent required under state law, authorizing the Plan Agent to file a certificate of dissolution upon entry of a final decree in the Case.

**6.3    Vesting of Property of the Estate in the Liquidating Debtor.**  On the Effective Date, (i) the Liquidating Debtor Assets shall vest in the Liquidating Debtor, free and clear of any liens, claims and encumbrances, except as otherwise provided in this Plan.

**6.4    The Plan Agent.**

**6.5.1    Identity From and After the Effective Date.**  _____, or another person to be designated by the Debtor and approved by the Bankruptcy Court at the Confirmation Hearing, shall serve as the Plan Agent pursuant to this Plan, until death, resignation or discharge or the appointment of a successor Plan Agent in accordance with this Plan, at which point such successor Plan Agent shall be the Plan Agent.  The Plan Agent shall be the sole officer, director and shareholder of the Liquidating Debtor.

**6.5.2    Responsibilities and Powers of the Plan Agent.**  In the exercise of its authority on behalf of the Debtor and Liquidating Debtor, the Plan Agent shall have, consistent with other provisions of this Plan, the following responsibilities and powers:

(i)   make all Distributions contemplated under this Plan;

(ii)   establish and maintain any reserves called for under this Plan, and such other reserves as determined to be prudent and/or necessary;

(iii)   enter into any agreement required by or consistent with this Plan and perform any obligations thereunder (including any Professionals retained by the Debtor during the Chapter 11 Case);

(iv)   participate as a party-in-interest in any proceeding before the Bankruptcy Court, or other court of competent jurisdiction, involving the Debtor, the Liquidating Debtor or the Chapter 11 Case;

(v)   employ such professionals, agents or employees as deemed necessary to carry out the provisions of this Plan and pay reasonable compensation to such persons from assets of the Estate;

(vi)   carry out and enforce the provisions of this Plan and consummate this Plan;

(vii)   propose any amendment, modification or supplement to this Plan;

(viii)    exercise such other powers and duties as are necessary or appropriate in the Plan Agent's discretion to accomplish the purposes of this Plan;

(ix)    pursue any Rights of Action on behalf of the Debtor and Liquidating Debtor and compromise or settle any Rights of Action in a manner consistent with this Plan;

(x)  open and maintain bank accounts as necessary to effectuate this Plan, including accounts in the name of the Liquidating Debtor;

(xi)  carry insurance coverage, including fiduciary insurance, as is normal and customary and in such amounts as deemed advisable;

(xii)    maintain appropriate records and account books relating to the consummation of this Plan, including records of all Distributions made or contemplated under the Plan and all transactions undertaken by the Plan Agent, acting as Plan Agent; and

(xiii)    exercise such other powers and duties as are necessary or appropriate in the Plan Agent's discretion to accomplish the purposes of this Plan.

(xiv)  management of and control over the Liquidating Debtor;

(xv)  consistent with maintaining the value and liquidating the residual assets of the Liquidating Debtor, invest funds of the Estate consist with the guidelines established by the Office of the United States Trustee;

(xvi)    effect the liquidation, sale and/or disposition of all Liquidating Debtor Assets, including the right to abandon any assets of the Liquidating Debtor that are burdensome and of no benefit;

(xvii)  act in the name of or in the place of the Debtor and/or Liquidating Debtor in any action before the Bankruptcy Court and/or any other judicial or administrative body;

(xviii)  pay all taxes, make all tax withholdings and file all tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Debtor;

(xix)    pay all lawful expenses, debts, charges and liabilities of the Liquidating Debtor;

(xx)  protect and defend any assets of the Liquidating Debtor;

(xxi)  maintain the Debtor's and the Liquidating Debtor's records; and

(xxii)  file dissolution documents with the appropriate governmental agencies to dissolve the Liquidating Debtor as applicable or necessary filing entry of a Final Decree.

**6.5.3   No Bankruptcy Court Approval.**   Except as otherwise provided in this Plan, the Plan Agent may perform any of its responsibilities and exercise any of its powers, including its compromise and settlement powers without seeking or obtaining Bankruptcy Court approval.

**6.5.4   Compensation of Plan Agent and its Professionals**.   In addition to reimbursement for the actual out-of-pocket expenses incurred, the Plan Agent and any employees or professionals engaged or retained by the Plan Agent, shall be entitled to reasonable compensation for services rendered.  The compensation of the Plan Agent will be calculated on a per hour basis using the Plan Agent's standard and customary billing rates.  The Plan Agent's professionals shall be entitled to reimbursement for out-of-pocket expenses incurred and reasonable compensation for services rendered on the same economic terms as is normal and customary for such professionals.  The Plan Agent and all professionals employed by the Plan Agent shall be entitled to payment of their post-Effective Date fees and expenses from the Liquidating Debtor on a monthly basis without further notice to or action or approval of the Bankruptcy Court.

**6.5.5   Resignation.**   The Plan Agent may resign as Plan Agent under the Plan by an instrument in writing signed by the Plan Agent and filed with the Bankruptcy Court.  Such resignation shall become effective ninety (90) days following the giving of such notice or upon the earlier appointment of a successor Plan Agent.

**6.5.6   Removal.**   The Plan Agent (including any successor Plan Agent) may be removed at any time with or without cause by the Bankruptcy Court.  Any party in interest may apply to the Bankruptcy Court for an order removing the Plan Agent for cause, with the determination of cause left to the reasonable discretion of the Bankruptcy Court.

**6.5.7   Appointment of Successor Plan Agent.**   In the event of the death, resignation or removal (prospective or otherwise) of the Plan Agent, any party in interest, any professional for the Plan Agent, the Plan Agent and/or the United States Trustee may seek to designate a successor Plan Agent, and the Bankruptcy Court shall appoint a successor Plan Agent.  Any successor Plan Agent appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Plan Agent an instrument duly accepting such appointment and agreeing to be bound by the terms of the Plan and thereupon such successor Plan Agent, without further act, deed or conveyance, shall become vested with all of the rights, powers, trusts and duties of the Plan Agent.

**6.6   Plan Administration Reserve.**   As soon as practicable following the Effective Date, the Plan Agent shall establish and fund from the Liquidating Debtor the Plan Administration Reserve account in an amount reasonably determined to be sufficient to adequately satisfy estimated costs, fees and expenses of the administration of (not including the satisfaction of Claims and Interests) of this Plan.  The Plan Agent may from time to time, in its reasonable discretion, adjust the amount held in the Plan Administration Reserve.  Notwithstanding the existence of the Plan Administration Reserve, the actual costs, fees and expenses of the administration of this Plan shall be payable by the Liquidating Debtor unless otherwise provided by this Plan.

**6.7     Further Orders.**  Upon motion by the Plan Agent, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate the consummation of this Plan.

**6.8     Post-Effective Date Reports, Final Decree.**  The Plan Agent shall file and serve upon the United States Trustee periodic status reports in substantially the form provided by the United States Trustee from the Effective Date until entry of a final decree, unless otherwise ordered by the Bankruptcy Court.  After the Debtor's Estate is fully administered, the Plan Agent shall file an application for a final decree closing the Case, and shall serve the application together with a proposed final decree on the master service list.

**6.9     Discharge of Plan Agent.**  Upon the final decree closing the Case becoming a Final Order, the Plan Agent shall be discharged and released from all further duties arising from or relating to this Plan and the Liquidating Debtor.  Upon entry of a final decree closing the Case, the Plan Agent and its professionals shall be released or discharged from all claims arising from their actions prior to entry of the final decree except for liability that results from bad faith, willful misconduct or gross negligence.

**6.10     Corporate Action.**  Each of the matters provided for under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, creditors, officers or directors of the Debtor or the Liquidating Debtor.

**6.11     Release of Liens.**  Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article 7 of this Plan, all mortgages, deeds of trust, Liens or other security interests against the property of the Estate vesting in the Liquidating Debtor will be fully released and discharged, and all of the rights, title and interests of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Liquidating Debtor and its successors and assigns.  As of the Effective Date, the Liquidating Debtor shall be authorized to file on behalf of creditors Form UCC-3s or other forms as may be necessary to implement the provisions of this Section 6.11.

**6.12     Restructuring Transactions.**  The Plan Agent on behalf of the Liquidating Debtor is authorized to take such actions as may be necessary or appropriate to effect the relevant Plan transactions.  Such actions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate organizational documents with the appropriate governmental authorities under applicable law; and (d) all other actions that the Plan Agent determines are necessary or appropriate, including the making of filings or recordings in connection with the relevant Plan transactions.

**6.13    Exemption from Certain Transfer Taxes and Recording Fees**   Pursuant to § 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Liquidating Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property, will not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.14    Withholding and Reporting Requirements.**   In connection with this Plan, the Plan Agent on behalf of the Liquidating Debtor shall (a) comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority; (b) timely file all tax returns as required by law to be filed; (c) continue to engage accountants or such other professionals to prepare and file all tax returns as required by law to be filed; (d) take such other actions as are reasonably necessary, including the allocation of sufficient funds, to file such returns; and (e) shall timely pay all taxes arising under any requirements or tax returns applicable to this Plan.

**6.15    Periodic Reports and United States Trustee's Fees**.   The Debtor's obligation of filing monthly financial reports with the United States Trustee shall pass to and become the obligation of the Liquidating Debtor and the Plan Agent as applicable and such obligation shall continue following Confirmation until the obligation to pay the United States Trustee's fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) ends, except such monthly reports will be filed periodically.  The Plan Agent shall be responsible for satisfying this obligation on behalf of the Liquidating Debtor.  The Plan Agent shall prepare, sign, and file all Post-Confirmation reports and shall pay any U.S. Trustee's fees due and owing from the funds of the Liquidating Debtor.  Copies of such reports shall be served on the United States Trustee and on any Claimant requesting continued service of same.

**6.16    Assignment and Prosecution of Rights of Action.**   Pursuant to and in accordance with §§ 105(a), 1123(b)(3), and 1141(b) of the Bankruptcy Code and except as provided below, upon the entry of the Confirmation Order, all Rights of Action shall be, and hereby are reserved, retained, and vested in the Liquidating Debtor for the benefit of holders of Allowed Claims and Allowed Equity Interests pursuant to the terms of this Plan.  All Rights of Action shall survive and continue Post-Confirmation, free and clear of all liens, claims, interests, encumbrances, defenses of res judicata, waiver, laches and estoppel, for investigation, prosecution, enforcement, settlement, abandonment, adjustment, or collection by the Liquidating Debtor for the benefit of the holders of the Allowed Claims and Allowed Equity Interests.  The Plan Agent shall be authorized and have standing to pursue Rights of Action on behalf of, and in the name of, the Liquidating Debtor.

(a)    Notice to Prosecutable Targets.  Without limiting the generality of the foregoing subparagraph (a), all Claimants and other parties in interest are hereby expressly advised and notified that the Liquidating Debtor shall  have the right to investigate, prosecute, enforce, settle, adjust, collect, or otherwise dispose of the Rights of Action. (A) ALL

CLAIMANTS, PERSONS, ENTITIES, AND OTHER PARTIES WHO RECEIVED DIRECTLY OR INDIRECTLY, PAYMENTS, OFFSETS, RECOUPMENTS AND/OR REBATES, OR TRANSFERS OF PROPERTY FROM THE DEBTOR WITHIN THE ONE (1) YEAR PERIOD PRECEDING THE PETITION DATE OR WITHIN SUCH LONGER PERIOD OF TIME AS MAY APPLY UNDER APPLICABLE LAW INCLUDING, WITHOUT LIMITATION, PERSONS INCLUDED IN THE "LIST OF RIGHTS OF ACTION TARGETS," WHICH INCLUDES A LIST OF PAYMENTS MADE WITHIN 180 DAYS PRIOR TO THE PETITION DATE ATTACHED AS EXHIBIT "B" TO THE DISCLOSURE STATEMENT (AND INCORPORATED HEREIN BY THIS REFERENCE, THE SAME AS IF SET FORTH AT LENGTH HEREIN), ARE HEREBY NOTIFIED THAT THEY MAY BE SUBJECT TO SUIT TO RECOVER ANY PREFERENCES, FRAUDULENT TRANSFERS, OR OTHER AVOIDABLE TRANSFERS AND TO PURSUE ANY RIGHTS OF ACTION. The inclusion of a Person in, or the omission of a Person from, Exhibit "B" to the Disclosure Statement does not mean that a decision has been made to assert, or not to assert, a Rights of Action against such Person. At this time, no determination has been made to pursue any particular Rights of Action. (B) In addition, all current and former officers, directors, shareholders, members, employees, partners, investors, agents, attorneys, accountants, equity holders, responsible parties and any other professional Person are hereby notified that they may be subject to an action under applicable law as a result of any action or inaction, decision or lack of decision or transaction or non-transaction, made or incurred Pre-Petition that resulted, directly or indirectly, in the commencement of the Case ("Derivative Claims"). The Liquidating Debtor shall review the Debtor's books and records, including the payments listed in Exhibit "B" to the Disclosure Statement, and other available information to determine whether any Rights of Action should be filed by the Liquidating Debtor.

(b)     Reservation of Rights of Action. The Liquidating Debtor specifically reserves the Rights of Action and, by setting forth notice to each currently known potential target of such a Rights of Action, expressly reserves such rights to survive beyond Confirmation, the finality of Confirmation, and all other legal effects of such Confirmation, provided, however, this reservation shall not mean and shall not be construed to mean that the exclusion of any Person from Exhibit "B" frees, releases or exonerates any Person from a Rights of Action by way of any defenses, and the Liquidating Debtor, the Plan Agent and their respective counsel shall have the right to investigate, pursue, prosecute and collect any unknown, but later discovered, Rights of Action against any Person.

(c)     Notice in Confirmation Order. The Court shall include in the Confirmation Order appropriate provisions incorporating the terms set forth in this Section 6.16 including, but not by way of limitation, the survival of the Rights of Action from the defense of res judicata, waiver, laches, and estoppel as to the Rights of Action and any other unknown but later discovered Claim or Claims after Confirmation and the approval of a grant of derivative jurisdiction for the Liquidating Debtor to prosecute the Rights of Action on behalf of the Debtor.

(d)     Discretion to Pursue or Settle and Immunity of the Parties. The Liquidating Debtor and the Plan Agent as applicable shall have discretion to pursue or not to pursue, to settle or not to settle, or to try or not to try, and/or to appeal or not to appeal the Rights of Action as they determine in the exercise of their business judgment and without any further approval of the Bankruptcy Court thereof. The Liquidating Debtor, the Plan Agent, and their

respective attorneys or other professionals shall have no liability for the outcome of their decisions.

6.17    **Provisions Relating to Default.**  Upon and after the Effective Date, the following provisions shall be applicable to the Liquidating Debtor:

(a)    Default of Plan.  This Plan shall go into "default" upon the occurrence of any one or more of the following events: (a) the Liquidating Debtor's material failure to file its periodic reports as required by this Plan or (b) the Liquidating Debtor's substantial and material failure to comply with any of the provisions of this Plan.

(b)    Remedies in Case of Default.  Upon default, any Claimant shall have the right to report such default to the Bankruptcy Court and seek an appropriate remedy, which can include dismissal, conversion, or such other remedy decided by the Court in its discretion as being in the best interest of holders of Allowed Claims under the Plan; provided, however, that any default that is cured by the Liquidating Debtor or Plan Agent shall not constitute cause for continued pursuant of remedies pursuant to this Section 6.17.

6.18    **Closing of Case.**  If, after the Effective Date, the Case is closed, such closing, (a) shall not alter, amend, revoke, or supersede the terms of this Plan, (b) shall not affect any rights of the Debtor, the holders of Claims or Equity Interests or the treatment of any other Person under this Plan, (c) shall continue to cause the terms of this Plan to remain binding on all Persons, (d) shall cause all orders of the Court to remain in full force and effect, and (e) shall cause the Bankruptcy Court to retain all jurisdiction set forth herein in Article 12 of this Plan.

## ARTICLE 7.
## PROVISIONS GOVERNING ALLOWANCES OF CLAIMS
## AND DISTRIBUTIONS FROM THE POST-CONFIRMATION ESTATE

7.1    **Distributions**.  All Distributions under this Plan shall be made by the Plan Agent pursuant to the terms and conditions contained in this Plan; provided, however, that no Distribution shall be made on behalf of any Claim which may be subject to disallowance under § 502(d) of the Bankruptcy Code.

7.2    **Distributions of Cash**.  All Distributions of Cash to be made by the Plan Agent pursuant to this Plan shall be made by a check or wire transfer from the Plan Agent's account maintained in accordance with this Plan.

7.3    **Distributions on a Subsequent Distribution Date**.  Pursuant to the provisions set forth in this Plan, to the extent that cash or other assets are available subsequent to the Initial Distribution Date, the Plan Agent shall, on a subsequent date (a "Subsequent Distribution Date"), distribute such Cash or other assets to the holders of Claims entitled to Distributions under the Plan that were Allowed on the Effective Date or subsequently have become Allowed Claims on or before the Subsequent Distribution Date in accordance with the schedules, treatment and priority of Claims established by the Plan.  The timing of any Subsequent Distribution Date and the amounts to be disbursed thereon shall be within the discretion of the Plan Agent.

**7.4      Distributions on a Final Distribution Date**.  Pursuant to the provisions set forth in this Plan, to the extent that cash or other assets are available subsequent to the Initial Distribution Date, any Subsequent Distribution Date and after the liquidation of any and all assets to be distributed under the Plan, the Plan Agent shall establish a final distribution date (the "Final Distribution Date") upon which the Plan Agent shall distribute such Cash or other assets to the holders of Claims or Equity Interests entitled to Distributions under the Plan that were Allowed on the Effective Date or subsequently have become Allowed Claims on or before the Final Distribution Date in accordance with the treatment and priority of Claims and Equity Interests established by the Plan.

**7.5      Delivery of Distributions and Undeliverable Distributions**.  Distributions to the holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules unless superseded by the address as set forth on the Proof of Claim filed by such holder or by a written notice to the Plan Agent providing actual knowledge to the Plan Agent of a change of address.   If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Agent is notified in writing within six months of the Distribution date of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.   All Claims for undeliverable Distributions shall be made within six months after the date such undeliverable Distribution was initially made.  If any Claim for an undeliverable Distribution is not timely made as provided herein, such Claim shall be forever barred with prejudice.   After such date, all unclaimed property shall be applied first to satisfy the costs of administering and fully consummating this Plan, then for Distribution in accordance with this Plan, and the holder of any such Claim shall not be entitled to any other or further Distribution under this Plan on account of such undeliverable Distribution or such Claim.

**7.6      Time Bar to Cash Payments and Disallowances**.  Checks issued by the Plan Agent in respect of Allowed Clams shall be void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Agent by the holder of the Allowed Claim to whom such check originally was issued, on or before the expiration of six months following the date of issuance of such check.  After such date, (a) all funds held on account of such void check shall be applied first to satisfy the costs of administering and fully consummating this Plan, then for Distribution in accordance with this Plan, (b) the Claim of the holder of any such void check shall be disallowed, and (c) such Claimant shall not be entitled to any other or further Distribution on account of such Claim.

**7.7      Minimum Distributions**.  If a Distribution to be made to a holder of an Allowed Claim on any Distribution Date, excluding the Final Distribution Date, would be $100.00 or less, notwithstanding any contrary provision of this Plan, no Distribution will be made to such Claimant.

**7.8      Transactions on Business Days**.  If the Effective Date or any other date on which a transaction, event or act may occur or arise under this Plan shall occur on Saturday, Sunday or other day that is not a Business Day, the transaction, event or act contemplated by this Plan to occur on such day shall instead occur on the next day which is a Business Day.

**7.9     Distributions After Allowance**.  Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes Allowed, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such holder belongs.

**7.10   Disputed Payments**.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Agent may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**7.11   No Distributions in Excess of Allowed Amount of Claim**.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

## ARTICLE 8.
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1     Objections to Claims**.  The Liquidating Debtor and the Plan Agent shall have the exclusive right to object to Claims including but not limited to objections regarding the allowance, classification or amount of Claims, subject to the procedures and limitations set forth in this Plan, the Bankruptcy Rules, and the Bankruptcy Code; provided, however, that the deadline for the Liquidating Debtor or Plan Agent to file objections to Claims shall be ninety (90) days after the Effective Date, unless further extended by the Bankruptcy Court upon notice to the holders of the 20 largest General Unsecured Claims and all others requesting notice pursuant to Bankruptcy Rule 2002.  All such objections shall be litigated to a Final Order except to the extent the Liquidating Debtor and Plan Agent, in their discretion, elect to withdraw any such objection or compromise, settle or otherwise resolve any such objection, in which event the Liquidating Debtor and Plan Agent may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**8.2     No Distribution Pending Determination of Allowance of Disputed Claims; Distributions to be Made on Undisputed Balances of Partially Disputed Claims**.  No proceeds shall be distributed under this Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim; provided, however, that, except as otherwise required by § 502(d) of the Bankruptcy Code, if a Claim is partially disputed, contingent or unliquidated but the balance of the Claim is undisputed, liquidated and not contingent (the "Undisputed Balance"), then distribution shall be made to the holder of the Claim on such Undisputed Balance and distribution shall be withheld on the part of the Claim that is disputed, unliquidated, or contingent unless and until such part becomes an Allowed Claim.

**8.3     Reserve Accounts for Disputed Claims**.  On or prior to the Initial Distribution Date and each Subsequent Distribution Date, the Plan Agent shall reserve Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (a) the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Initial Distribution Date, or (b) such lesser amount as the Court may estimate or may otherwise order (the "Disputed Claims Reserve").

**8.4    Investment of Disputed Claims Reserve**.  The Plan Agent shall be permitted, from time to time, to invest all or a portion of the Cash in the Disputed Claims Reserve in United States Treasury Bills (or in a fund that invests substantially all of its assets in United States Treasury securities), interest-bearing certificates of deposit, tax exempt securities or investments permitted by § 345 of the Bankruptcy Code, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate risk.  All interest earned on such Cash shall be held in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and shall be used by the Liquidating Debtor in accordance with this Plan.

**8.5    Allowance and Payment of Disputed Claims**.  Except as otherwise provided herein, if, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Plan Agent shall, within 30 days after the date on which such Disputed Claim becomes an Allowed Claim or as soon thereafter as is practicable or upon a Subsequent Distribution Date, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of distributions that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

**8.6    Release of Excess Funds from Disputed Claims Reserve**.  If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of the amount which the Plan Agent is required at such time to reserve on account of Disputed Claims under this Plan or pursuant to any order of the Bankruptcy Court, the Plan Agent may release such funds from the Disputed Claims Reserve to the Liquidating Debtor as such Cash will be distributed pursuant to the Plan.

**8.7    Estimation**.  The Plan Agent or the Liquidating Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether there has been a previous objection to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Agent or the Liquidating Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Section 8.1 of this Plan.

## ARTICLE 9.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1    Rejection of Executory Contracts and Unexpired Leases**.  Except as otherwise provided in the Confirmation Order, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all remaining Executory Contracts and Unexpired Leases as such terms are used in Section

365 of the Bankruptcy Code that exist between the Debtor and any entity shall be deemed rejected as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed, assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption, assumption and assignment or rejection has been filed prior to the Effective Date. Any claims arising from the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") shall be classified in Class 5 under this Plan.

**9.2    Bar Date for Filing Rejection Claims.**  A Proof of Claim asserting a Rejection Claim shall be filed with the Plan Agent on or before the thirtieth (30th) day after the Effective Date or be forever barred from assertion of any Rejection Claim against and payment from the Liquidating Debtor.

**ARTICLE 10.**
**CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THE PLAN**

**10.1    Conditions to the Effective Date**.  The Effective Date will not occur, and the Plan will not be consummated unless and until the following conditions have been satisfied or duly waived pursuant to Section 10.2 of this Plan:

(a)      The Confirmation Order, with the Plan and all exhibits and annexes to each, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court, and shall be a Final Order, and no request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; provided, however, that if the Confirmation Order has not become a Final Order because a notice of appeal has been timely filed and the parties are not stayed or enjoined from consummating the Plan, this Section 10.1(a) shall be deemed satisfied unless the effect of the appeal could reasonably be expected to be adverse to the business, operations, property, condition (financial or otherwise) or prospects of the Liquidating Debtor, taken as a whole; and

(b)      All actions, documents and agreements necessary to implement this Plan shall be in form and substance reasonably satisfactory to the Debtor and shall have been effected or executed as applicable.

**10.2    Waiver of Conditions**.  The conditions set forth in Section 10.1 of this Plan may be waived by the Debtor, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

**ARTICLE 11.**
**EFFECT OF CONFIRMATION**

**11.1    Revesting of Assets**.  Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Estate (including Rights of Action) shall revest in the Debtor and, ultimately, in the Liquidating Debtor, free and clear of all Claims, Liens and Equity Interests of holders of Claims and Equity Interests (other than as expressly provided herein).

**11.2    Discharge of the Debtor**.  Pursuant to § 1141(d) of the Bankruptcy Code and, except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights

afforded and the payments and distributions to be made and the treatment under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of any and all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor, the Liquidating Debtor, its property, the Debtor's assets, or the Estate, and shall effect a full and complete release, discharge, and termination of all Liens, security interests, or other claims, interests, or encumbrances upon all of the Debtor's assets and property. Further, all Persons are precluded from asserting, against any of the Debtor or the Liquidating Debtor or their successors, or any property that is to be distributed under the terms of the Plan, any Claims, obligations, rights, causes of action, or liabilities based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided for in the Plan, or the Confirmation Order, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed; or (c) the Claimant based upon such debt has accepted the Plan. Except as otherwise provided in the Plan or the Confirmation Order, all Claimants arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Liquidating Debtor or the Debtor, or their successors or property, or the Debtor's assets, any of the following actions on account of such Claim: (i) commencing or continuing in any manner any action or other proceeding on account of such Claim against the Liquidating Debtor, the Debtor, or the property to be distributed under the terms of the Plan, other than to enforce any right to distribution with respect to such property under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Liquidating Debtor, the Debtor or any of the property to be distributed under the terms of the Plan, other than as permitted under sub-paragraph (i) above; (iii) creating, perfecting, or enforcing any Lien or encumbrance against property of the Liquidating Debtor, the Debtor, or any property to be distributed under the terms of the Plan; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due any Debtor, the Liquidating Debtor, their assets or any other property of the Debtor, the Liquidating Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan. The foregoing discharge, release and injunction are an integral part of the Plan and are essential to its implementation. The Debtor and the Liquidating Debtor shall have the right to independently seek the enforcement of the discharge, release and injunction set forth in this Section 11.2. The provisions of this section shall be fully applicable and enforceable as to Equity Interests and the holders of Equity Interests in the event that the Plan is confirmed.

      **11.3 No Waiver of Discharge**. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any way the discharge granted to the Debtor upon Confirmation of the Plan by § 1141 of the Bankruptcy Code.

      **11.4 Binding Effect**. As of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, the Liquidating Debtor, all Claimants and holders of Equity Interests, other parties-in-interest and their respective heirs, successors, and assigns.

      **11.5 Term of Injunctions or Stays**. Unless otherwise provided in this Plan, all injunctions or stays provided for in this Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until

the Effective Date, at which time they are replaced with the injunction set forth in Section 11.2 herein.

**11.6  Setoffs**.  Except with respect to Claims specifically Allowed under the Plan, the Debtor or the Liquidating Debtor, as applicable, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such Claimant; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Debtor of any such claim that the Debtor or the Liquidating Debtor may have against such Claimant.

**11.7  Exculpation.**  Neither (a) the Plan Agent or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by it, nor (b) each Professional for the Debtor or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them (the persons identified in (a) and (b) are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtor, the Case or the Estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the disclosure statement or any contract, instrument, release or other agreement or document entered into or any action take or omitted to be taken in connection with this Plan except for acts constituting willful misconduct or gross negligence and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel.  In any action, suit or proceeding by any Person contesting any action by, or non-action of, any Protected Person as constituting willful conduct or gross negligence or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party; and as a condition to going forward with such action, suit or proceeding at the outset thereof all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

**11.8  Indemnification.**  The Liquidating Debtor shall indemnify each Person identified as a Protected Person against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities relating to the Debtor, the Liquidating Debtor or this Plan; provided, however, that no Protected Person shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Protected Person was grossly negligent or acted fraudulently or with willful misconduct in performing such Protected Person's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law.  Any Protected Person entitled to indemnification under this Section 11.8 shall have a priority distribution right that is senior to the holders of Allowed Claims in Classes 4, 5, 6 and 7.  The Plan Agent may use Liquidating Debtor's assets (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this Section 11.8.

## ARTICLE 12.
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Cases, this Plan and the Confirmation Order pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     to determine the allowance or classification of Claims and Equity Interests and to hear and determine any objections thereto;

(b)     to determine any and all motions, adversary proceedings, applications, contested matters and other litigated matters in connection with the Case that may be pending in the Bankruptcy Court on, or initiated after, the Effective Date;

(c)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(d)     to issue such orders in aid of the execution, implementation and consummation of this Plan to the extent authorized by § 1142 of the Bankruptcy Code or otherwise;

(e)     to construe and take any action to enforce this Plan;

(f)     to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)     to modify this Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in this Plan so as to carry out its intent and purposes;

(h)     to hear and determine all applications for compensation and reimbursement of expenses of professionals under §§ 328(a), 330, 331, and 503(b) of the Bankruptcy Code;

(i)     to determine any other requests for payment of Priority Tax Claims, Priority Claims or Administrative Expense Claims;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(k)     to consider and act on the compromise and settlement or payment of any Claim against the Debtor, the Liquidating Debtor or the Estate;

(l)     to recover all assets of the Debtor and property of the Estate, wherever located;

(m)     to determine all questions and disputes regarding title to the assets of the Debtor, the Liquidating Debtor or the Estate;

(n)     to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(o)     to remedy any breach or default occurring under this Plan;

(p)     to resolve and finally determine all disputes that may relate to, impact on or arise in connection with this Plan;

(q)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     to hear any other matter consistent with the provisions of the Bankruptcy Code; and

(s)     to enter a final decree closing the Case.

## ARTICLE 13.
## GENERAL PROVISIONS

**13.1  Modification of Plan**.  The Debtor may propose amendments to or modifications of this Plan under § 1127 of the Bankruptcy Code at any time prior to the entry of the Confirmation Order.  After the Confirmation Date, the Plan Agent may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of Claimants are not materially and adversely affected.

**13.2  Distribution Pending Stay on Appeal**.  Any stay pending appeal shall apply only to amounts in controversy and distribution of amounts not in controversy shall continue in accordance with the terms of the Plan.

**13.3  Extensions of Time**.  Notwithstanding any time limitation in this Plan, the Bankruptcy Court may, pursuant to a motion filed with the Bankruptcy Court prior to the expiration of such time limitation and for good cause shown, extend such time limitation.

**13.4  Post-Confirmation Actions, Reports and Final Decree**.  After the Effective Date, the following events shall occur:

(a)     Reports of Distribution.  The Plan Agent shall file with the Bankruptcy Court periodic reports of recoveries on Prosecutable Claims and disbursements to holders of Allowed Claims under this Plan, with a copy to the United States Trustee, and any Claimant who requests a copy of same.

(b)    Final Report.  Upon completion of all distributions provided for herein, the Plan Agent shall file a report of final distribution with the Bankruptcy Court, with service on the United States Trustee, and any Claimant who requests a copy of same.

(c)    Request for Post-Confirmation Notices and Filings.  After the Effective Date, no Claimant will be served any notices, motions, reports or other filings in the Bankruptcy Court except as set forth in Section 13.5 of this Plan.  Any Claimant or other party-in-interest who desires service of post-Effective Date notice(s) required in this Plan shall deliver a written request to the Liquidating Debtor and the Plan Agent requesting service of such notices.

**13.5  Notices**.  Any pleading, notice or other documents required by the Plan or the Confirmation Order to be served on or delivered to the Debtor, the Liquidating Debtor or the Plan Agent must be sent by U.S. mail, overnight delivery service, facsimile transmission, courier service or messenger to:

> Okin Adams & Kilmer LLP
> Christopher Adams
> M. Renee Moxley
> 1113 Vine Street, Suite 201
> Houston, Texas  77002.

**13.6  Notice of Effective Date.**  On or as soon as practicable following the Effective Date, the Plan Agent shall file a "Notice of Effective Date," which notice shall constitute appropriate notice that this Plan has become effective.  Except for the filing of such notice, the Plan Agent shall have no obligation to notify any Person of the occurrence of the Effective Date. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid to those Persons that have filed with the Bankruptcy Court requests for notices with respect to the Cases.  Regardless of whether actual notice of the Effective Date is delivered to any Person or Entity, compliance by the Plan Agent with this Section 13.6 shall constitute effective and sufficient notice of the occurrence of the Effective Date to any Person or Entity for all purposes, including the satisfaction of post-Effective Date action deadlines, under this Plan.

**13.7  Transfer of Claims.**  Claims may be transferred after the Confirmation Date but such transfer will be honored only if applicable notice is given to the Liquidating Debtor and the Plan Agent only in accordance with Bankruptcy Rule 3001.  Pre-Confirmation transfers of Claims shall be recognized if the transfer was done in accordance with Bankruptcy Rule 3001.

**13.8  Captions**.  Paragraph captions used herein are for convenience only and shall not affect the construction of this Plan.

**13.9  Choice of Law**.  Except to the extent that the Bankruptcy Code or other federal statutes or regulations are applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of Texas.  In the event of an inconsistency between the terms of this Plan and the laws of the State of Texas, the terms of this Plan shall prevail.

Dated:   September 17, 2010

Respectfully submitted,

CryptoMetrics, Inc., Debtor

By:   */s/ Danny W. Mills*_____
    President of CryptoMetrics, Inc.