# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Chapter 11 |
| CRYPTOMETRICS, INC., § | |
| § | |
| Debtor. § | CASE NO. 10-53622 |
| § | |

## BIDDING PROCEDURES FOR THE AUCTION OF
## CERTAIN ASSETS OF THE DEBTOR

CryptoMetrics, Inc., as Debtor and Debtor in Possession (the "Debtor") set forth below the following bid procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale of substantially all of Debtor's assets (the "Assets").

### I. Assets to be Sold

The Auction shall consist of the Assets, which consist of certain shares of the Debtor (the "Shares") and certain of the Debtor's patents (the "Patents"), as defined in the Asset Purchase Agreement (the "Stalking Horse APA") by and among Security Concepts Group, LLC ("SCC" or the "Stalking Horse Bidder") and the Debtor.

### II. Confidentiality Agreements

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to the Debtor, any party that wishes to conduct due diligence on the Assets may be granted access to information available that has been or will be provided to the other bidders.

### III. Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualifying Bid on or before November 15, 2010 (the "Bid Deadline") in writing, to:

    i.    Counsel to the Debtor:
             Christopher Adams

    Okin Adams & Kilmer LLP
    1113 Vine Street, Suite 201
    Houston, Texas 77002

 ii. Counsel to the Stalking Horse Bidder:
    Timothy A. Davison, II
    Andrews Kurth LLP
    600 Travis Street, Suite 4200
    Houston, Texas 77002

## IV. Qualifying Bids

In order to participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder must submit a "Qualifying Bid" by the Bid Deadline. To constitute a Qualifying Bid, a bid must:

 i. Be in writing;

 ii. State that such bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Stalking Horse APA;

 iii. State that such bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Assets on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the Stalking Horse APA;

 iv. Include a clean and duly executed Asset Purchase Agreement (the "Modified APA") and a "blacklined" comparison against the Stalking Horse APA to show any changes requested by the bidder. All Modified Purchase Agreements must be on substantially the same terms and subject to the same conditions as set forth in the Stalking Horse APA;

 v. State that such bidder is financially capable of consummating the transactions contemplated by the Modified APA;

 vi. Include such financial and other information that will allow the Debtor to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA;

 vii. Not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

viii.  Fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

ix.  Not contain any due diligence or financing contingencies of any kind;

x.  Include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified APA; and

xi.  Include a cash deposit equal to ten percent (10%) of the amount offered to purchase the Assets (the "Good Faith Deposit");

xii.  Be in an amount at least at the amount of the Break-Up Fee (as defined in the Debtor's Motion for Bidding Procedures[1]) plus the Reimbursement Amount[2] (as defined in the Debtor's Motion for Bidding Procedures) plus $100,000.00 greater than the Purchase Price (i.e., $10,984,750).

The Debtor shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than 5:00 p.m. (Central Time) on November 16, 2010 or a date to be set by the Court.[3]

**V.  Auction**

In the event that the Debtor timely receives one or more Qualifying Bid, in addition to the bid of SCG, which is deemed to be a Qualifying Bid, the Debtor shall conduct the Auction with respect to the Assets. The Auction will be conducted at the offices of Okin Adams & Kilmer LLP, 1113 Vine Street, Suite 201, Houston, Texas 77002, on or before November 18, 2010, or such other location as designated by the Debtor in a notice to all Qualifying Bidders. The Auction shall be governed by the following procedures:

---

[1] Debtor's Motion for an Order (I) Approving the Form of Stalking Horse APA, (II) Approving Bidding Procedures for an Auction of Debtor's Assets, (III) Scheduling the Date for the Auction, (IV) Approving the Form of Proposed Notice of Auction and Sale Hearing, and (V) Setting Certain Dates Related to the Sale of the Debtor's Assets.

[2] It is anticipated that the Reimbursement Amount will be approximately $75,000.

[3] The exact dates and times will be set forth in a separate scheduling order to be presented to the Court at the hearing on this Motion.

i. The Qualifying Bidders shall appear in person at the Auction or through a duly authorized representative;

ii. Only representatives of the Debtor and holders of Qualifying Bids shall be entitled to be present at the Auction;

iii. Only the Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

iv. Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

v. Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

vi. Qualifying Bidders may then submit successive bids in increments of at least $100,000 higher than the previous bid;

vii. All Qualifying Bidders shall have the right to submit additional bids, subject to clause (vi) above, and make additional modifications to the Stalking Horse APA or Modified APA, as applicable, at the Auction;

viii. The Auction will be conducted to achieve the maximum value for the Assets and may include individual negotiations with the Qualifying Bidders and/or open bidding in the presence of all other Qualifying Bidders; and

ix. The Auction shall continue until there is only one offer that the Debtor determines, subject to Court approval, is the highest or best offer from among the Qualifying Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the Debtor may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APA requested by each Qualifying Bidder, and the net benefit to the Debtor's estate. The Qualifying Bidder, submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Modified APA.

Prior to adjourning the Auction, the Debtor, in the exercise of its business judgment, shall make a determination of the Successful Bidder and such Successful Bidder shall complete and execute all necessary documents. Bids made after the close of the Auction shall not be considered by the Debtor and the Auction shall not be re-opened. The Debtor will ask the Court for a hearing to approve the sale to the Successful Bidder to be held at the first available date the Court has after the adjournment of the Auction.

In the event that the Debtor does not timely receive one or more Qualifying Bids, other than the Stalking Horse bid, the Debtor shall promptly seek the entry of a sale order and otherwise take all steps contemplated in the Stalking Horse APA and otherwise necessary and to receive Bankruptcy Court approval and consummate the sale of the Assets to the Stalking Horse Bidder without conducting the Auction.

## VI. Return of Good Faith Deposits

Except as otherwise provided herein, Good Faith Deposits shall be returned to each Qualifying Bidder not selected by the Debtor as the Successful Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction.